

RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE _10/04/05_

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JUDITH BROWN DAVIS | : | DOCKET NO. 04 CV 0938 |
| VS. | : | JUDGE MINALDI |
| ALLEN PARISH SERVICE DISTRICT D/B/A ALLEN PARISH HOSPITAL, AND SCOTT BARRILLEAUX, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DIRECTOR OF ALLEN PARISH HOSPITAL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Presently before the court are Motions for Summary Judgment filed by the defendant, Scott Barrilleaux [doc.#19] and defendant Allen Parish Service District d/b/a Allen Parish Hospital [doc.# 16]. This matter has been fully briefed and is ready for disposition.

Plaintiff Judith Brown Davis ("Ms. Davis") brought the instant action following termination of her employment with Allen Parish Hospital ("Allen Parish"). Ms. Davis was employed as a registered nurse in the psychiatric unit of the Hospital. She was terminated on May 5, 2003 for events which occurred on the evening of May 1, 2003 involving a mentally unstable patient.

Ms. Davis filed suit claiming (1) a violation of 42 U.S.C. Section 1983 against Mr.

Barrilleaux in both his individual and official capacities, (2) a violation of La. R.S. 23:967 against Mr. Barrilleaux individually and officially, and (3) defamation and invasion of privacy against all defendants. Ms. Davis has since voluntarily withdrawn (1) the 42 U.S.C.A. 1983 claim against both Mr. Barrilleaux in his official capacity, the claim against Mr. Barrilleaux individually for violation of La.R.S. 23:967, (2) the claim against Mr. Barrilleaux individually for violation of La.R.S. 23:967, and (3) the invasion of privacy claim against all defendants. The remaining claims are:

(1) The claim against Mr. Barrilleaux in his official capacity as Director of the Hospital for the violation of La.R.S. 23:967.

(2) The 42 U.S.C.A. §1983 claim against both Scott Barrilleaux individually as well as Allen Parish Hospital.

(3) The defamation claim against Scott Barrilleaux in his official capacity as Director of the Hospital.[1]

Both defendants have moved for summary judgment on all claims.

### Summary judgment standard

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548,

---

[1] By letter to Mr. Barrilleaux's counsel, attached as Exhibit A to defendant's Reply Memo to Plaintiff's Response to the Court's Order, plaintiff's counsel admits that Ms. Davis does not seek a judgment against Mr. Barrilleaux individually on the claims for defamation or retaliation under La.R.S. 23:967. The sole claim made against Mr. Barrilleaux relates to the alleged violations of 42 U.S.C.A. §1983.

2552-54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact.[3] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. See *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed.R.Civ.P. 56(e); see also *Topalian*, 954 F.2d at 1131.

### Analysis

**Background**

Ms. Davis began her employment at Allen Parish Hospital in November of 1998 as a nurse in both the acute care and psychiatric wings of the hospital. Although she had some history

of disciplinary issues, she remained employed until May of 2003 when the incident made the subject of this litigation occurred. At the time, Scott Barrilleaux had been serving as the Administrator/Director of Allen Parish Hospital for approximately six months.

As of May 2003, Ms Davis had been consistently working in the psychiatric unit for nearly a year. The psychiatric unit treats patients with mental instability as well as those being treated for substance abuse. At 7:00 p.m. on May 1, 2003, Ms. Davis began a twelve hour shift as the only registered nurse on duty in the psychiatric unit. Just prior to beginning her shift Ms. Davis alleges that she discussed a particular patient with the Day Shift Nurse/Assistant Director of Nursing, Lori Manuel. This patient had been making threats against, among others, the President of the United States. Ms. Davis alleges that during this conversation she and Ms. Manuel agreed that the Secret Service would be contacted Monday May 5, if the threats continued. Defendants deny this conversation took place but offer no competent summary judgment evidence to support this denial.

According to Ms. Davis, around 8 p.m. this same patient began cursing and hollering in English and Arabic languages and making threats against the President of the United States, other interests of the government and the hospital staff. The patient also indicated that he had friends who would help him carry out these threats. As a result, Ms. Davis enlisted the help of the others on duty and moved the patient into an isolation room where he was placed in four-point restraints and given medication to calm him. Ms. Davis then called the United States Secret Service to report the patient's threats against the President. Ms Davis completed her shift without any other significant events with the patient.

The next day, Mr. Barrilleaux was in his office speaking with the hospital's attorney. As he talked on speaker phone, Colleen Unkel, the Director of Clinical Services, entered his office

and advised him of the evening shift activities, particularly that Ms. Davis had notified the Secret Service of the patient's threats. The Hospital's attorney told Mr. Barrilleaux that Ms. Davis had violated the rules of patient confidentiality and that her employment should be terminated. Mr. Barrilleaux conducted a further investigation and spoke with the Hospital's Chairman of the Board, Ronald Craiger, who told him to follow the direction of the Hospital attorney. On May 5, 2003, Ms. Davis was formally terminated by her supervisor, Vicki Neely and Colleen Unkel. The termination form indicated that she was being terminated for "violating patient confidentiality by calling the Secret Service. Using poor judgment." Mr. Barrilleaux was not present when Mrs. Neely and Ms. Unkel advised Ms. Davis of her termination.

As Ms. Davis was exiting the hospital that afternoon, she passed Mr. Barrilleaux and requested a meeting to discuss her termination. A meeting was scheduled and conducted a day or two later. After talking, Mr. Barrilleaux agreed to speak again with the hospital's attorney and chairman of the board. He did so and was advised that the termination should stand. Ms. Davis was later advised of the decision.

**I. Louisiana Whistleblower Statute**

Ms. Davis asserts that Scott Barrilleaux, in his official capacity as hospital administrator violated LSA R.S. 23:967A when he terminated Davis allegedly in retaliation for reporting the threats of a patient to the U.S. Secret Service. Defendants maintain that this claim should be dismissed because (1) the statute applies only to situations in which the actual employer has committed the unlawful act, and (2) Ms. Davis cannot prove the Hospital violated a state law. The Louisiana Whistleblower Statute, La. R.S. 23:967, provides:

A. An employer is prohibited from reprisal against an employee "who in good faith, and after advising the employer of the violation of law:

(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.

(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.

(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

B. An employee may commence a civil action in a district court where the violation occurred against *any employer who engages in a practice* prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.

C. For the purposes of this Section, the following terms shall have the definitions ascribed below:

(1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.

(2) "Damages" include compensatory damages, back pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from the reprisal.

D. If suit or complaint is brought in bad faith or if it should be determined by a court that the employer's act or practice was not in violation of the law, the employer may be entitled to reasonable attorney fees and court costs from the employee.

(LSA-R.S. 23:967, emphasis added). Davis claims that the particular conduct she reported to her employer and then disclosed to the Secret Service falls within the scope of subsection A(1) as "a workplace act or practice that is in violation of state law" because that subsection does not state that the unlawful conduct disclosed must be the employer's unlawful

conduct. This interpretation is both illogical and contrary to case law. The Louisiana Whistleblower Statute targets serious *employer conduct* that violates the law. *Puig v. Greater New Orleans Expressway Commission*, 00-924 (La.App. 5 Cir. 10/31/00), 772 So.2d 842, 845, *writ denied*,00-3531 (La.3/9/01), 786 So.2d 731. The prerequisite for filing a claim under 23:967 is that an "*employer* must have committed a 'violation of state law' for an employee to be protected from reprisal."*Barber v. Marine Drilling Management, Inc.*, 2002 WL 237848 (U.S.D.C., E.D.L.a 2/15/2002) (emphasis added). Furthermore, because La.-R.S.23:967 is an anti-retaliation statute, it follows logically that the unlawful conduct reported by the employee must be that of the employer.

Alternatively, Davis asserts that her reporting activity is also covered under subsection A(2) of the statute. That subsection bars reprisal against an employee who "provides information to...[a] public body conducting an investigation, hearing, or inquiry into any violation of law." Davis argues that the Secret Service, as a government agency which conducts ongoing investigations into violations of the laws which protect public officials and the government from sabotage, is a "public body" within the statute's meaning of that term. This may be so. Nevertheless, subsection A(2) requires that the employee report information not merely to a public body but to a public body *conducting an investigation, hearing or inquiry*. Subsection A(2) does not extend protection to an employee whose reporting activity initiates the public body's investigation or inquiry. Any investigation or inquiry by the Secret Service in this case did not commence until after Davis reported the patient's threats, thus the prerequisite that the employee's reporting activity be made in cooperation with an already commenced investigation is not satisfied. Further, Davis' assertion that the Secret Service's general and ongoing investigatory powers amounts to an "investigation, hearing or inquiry" constitutes an equally

untenable interpretation of the statute.

Davis has failed to establish a required element of her claim under the Louisiana Whistleblower Statute because the incidents complained of fall outside the scope of both subsection A(1) and A(2). Consequently, Davis may not recover for any alleged retaliation and summary judgment on that claim must be granted in favor of the defendants.

## II. Defamation

Similarly, Ms Davis cannot establish the essential elements of her defamation claim. To state a cause of action in defamation, plaintiff must allege "(1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury." *Farria v. La Bonne Terrebonne of Houma, Inc.* 476 So.2d 474, 474 (La.App. 1 Cir.,1985) *(citing Cangelosi v. Schwegmann Brothers Giant Super Markets,* 390 So.2d 196, 198 (La.1980)).

Defamatory words are those which tend to harm the reputation of another so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her. *Sassone v. Elder,* 626 So.2d at 352. If a statement "tends to expose the plaintiff to contempt, hatred, ridicule or obloquy, or causes her to be shunned or avoided, or has a tendency to deprive her of the benefits of public confidence or injure her in her occupation," the statement is defamatory. 5 *Martin v. Lincoln General Hospital,* 588 So.2d 1329, 1332-33 (La.App. 2d Cir.1991). Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, are considered defamatory on their face, or defamatory per se. *Elmer v. Coplin,* 485 So.2d 171 (La.App. 2d Cir.1986), *writ denied.* Further, when the plaintiff proves publication of words which are defamatory per se, the elements of falsity, malice and frequently even injury are

presumed, but may be rebutted by the defendant. *Elmer v. Coplin,* 485 So.2d 171 (La.App. 2d Cir.1986), *writ denied.*

Even when the plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified. *Bell v. Rogers,* 698 So.2d 749, 755, (La.App. 2 Cir.,1997) (citation omitted). A conditional or qualified privilege exists if the communication was made in good faith on a subject matter in which the speaker has an interest or duty and made to a person with a corresponding interest or duty. *Martin v. Lincoln General Hospital,* 588 So.2d at 1333; *Toomer v. Breaux,* 146 So.2d 723 (La.App. 3d Cir.1962). "Communications between appropriate persons within an employer's walls, concerning allegations of conduct by an employee that bears on the employer's interest, are subject to the qualified privilege if made in good faith." *Martin v. Lincoln General Hospital,* 588 So.2d at 1333.

Although the "breach of patient confidentiality" language appearing on her notice of termination and verbally conveyed to various individuals within the hospital might constitute a per se defamatory statement, Ms. Davis has submitted no evidence whatsoever of "publication." Publication is generally defined as a communication to a person other than the one alleging the action. *Thomas v. Busby,* 670 So.2d 603. However, statements between employees made within the course and scope of their employment, are not statements communicated or publicized to third persons so as to constitute a "publication." *Marshall v. Circle K Corporation,* 715 F.Supp 1341, 1343 (the information included in the Record of Separation which set forth the reasons for plaintiff's termination was not a "publication" because it was never circulated outside of the corporation); *Cangelosi v. Schwegmann Brothers Giant Super Markets,* 390 So.2d 196, 198

(1980) (statements made by and in the presence of other supervisory personnel, to an employee concerning an altered check, did not constitute publication, since the supervisory personnel were essential to the investigation). They are merely communications of the corporation itself and cannot be construed as being a communication to a third party. *Commercial Union Ins. Co. v. Melikyan*, 424 So.2d 1114, 1115 (La.App. 1 Cir.,1982). The statements about Ms. Davis were made in the course of a workplace investigation and were communicated only to those who played a necessary role in that investigation. Clearly, Mr. Barrilleaux, as well as the other supervisory employees and directors who became privileged to the alleged defamatory statement, were within the course and scope of their employment in investigating the incident, preparing the written report and discussing the matter with Ms. Davis. Therefore, this court concludes that Ms. Davis has failed to make a sufficient showing with respect to the element of publication.

The cause of action of defamation fails if even one of these elements is lacking. *Roberts v. Louisiana Bank & Trust Co.*, 550 So.2d 809 (La.App. 2d Cir.1989), *writ denied*. See also *Sassone*, 626 So.2d at 352; *Taylor v. Town of Arcadia*, 519 So.2d 303, 306 (La.App. 2d Cir.1988), *writ denied*. Furthermore, because the court finds the record lacking regarding an essential element of the claim, a discussion of the qualified privilege defense will be pretermitted. *Bell v. Rogers* 698 So.2d 749, *756, 29,757 , 11 (La.App. 2 Cir.,1997).

### III. 42 U.S.C. 1983 Claim

Ms. Davis has also asserted a claim under the Federal Civil Rights statute against both Allen Parish Hospital and Mr. Barrilleaux in his individual capacity. That statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C.A. § 1983. Ms. Davis' asserts that Allen Parish Hospital was a service district of the state of Louisiana such that Section 1983 is applicable. Ms. Davis further alleges that Allen Parish Hospital and Mr. Barrilleaux (1) deprived her of her freedom of speech rights guaranteed by the First Amendment of the United States Constitution and Article 1 Section 7 of State of Louisiana, and (2) violated her due process rights protected by the Fourteenth Amendment of the United States Constitution and Article 1 section 2 the Louisiana Constitution.

As a threshold matter, Mr. Barrilleaux asserts that he may not be sued in his individual capacity under 42 U.S.C. A. §1983 because he is not a "person" within the meaning of that statute. Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (U.S.Mich.,1989) (internal citations omitted). However, certain civil rights actions may, in some limited circumstances such as constitutional claims brought under 42 U.S.C.A. 1983, be maintained against state actors individually. See *Hafer v. Melo* 502 U.S. 21, 31, 112 S.Ct. 358, 365 (U.S.Pa.,1991) (state officials, sued in their individual capacities, are "persons" within the meaning of § 1983).

When determining whether to subject an individual state actor to potential liability under Section 1983, the Fifth Circuit inquires whether the individual had final decision making authority with respect to the decision actually made. See *Beattie v. Madison County School District*, 254 F. 3d 595 (5th Cir. 2001). In *Beattie*, the Fifth Circuit held that two defendants, a

school principal and school superintendent, each sued in their individual capacity for allegedly terminating plaintiff in violation of section 1983, could not be held liable because neither were empowered to terminate the plaintiff. Rather, they could only recommend termination to the school's board.

In *Harris v. Victoria Independent School Dist.* 168 F.3d 216, 225 (C.A.5 Tex.,1999), the same court found a school board liable under §1983 for approving a superintendent's recommendation to transfer and reprimand two teachers who, as elected representatives of their faculty, relayed comments adverse to the superintendent at a committee meeting. The Court held that, in ratifying the superintendent's decision through a grievance hearing in which it acquired actual knowledge of the basis for the termination, the school board in *Harris* assumed liability despite having delegated employment authority to the superintendent.

Mr. Barrilleaux testified in his deposition that, as Hospital Director, he was employed in the capacity of chief executive officer of the hospital. *Deposition of Scott Barrilleaux* p. 9 ln. 19. He described his job as encompassing "operational control" over the hospital and he was entrusted with "...full authority in terms of making personnel decisions." *Id* at p. 10, 55. In his Reply Memorandum, Mr. Barrilleaux even acknowledges that he possessed the authority to terminate Ms. Davis or any other hospital employee on his own. Nevertheless, the undisputed facts show that is not what occurred in this case. Mr. Barrilleaux learned of Ms. Davis contacting the Secret Service while on the telephone with the Hospital's attorney who recommended that Ms. Davis be terminated. *See* Affidavit of Richard McMillan, Defendant's Exh. D After this discussion, Mr. Barrilleaux presented the issue to Ronald Craiger, the Hospital's Chairman of the Board. In his affidavit Mr. Craiger states that "based on the investigation performed by Mr. Barrilleaux and the recommendations of the Hospital's attorney, all of which was explained to

me by Mr. Barrilleaux, *I instructed Mr. Barrilleaux* to follow the recommendations of the Hospital's attorney *and terminate Judith Brown Davis.*" See *Affidavit of Ronald Craiger*, Defendant's Exhibit D, pg. 2 (emphasis added).

Ms. Davis has failed to put forth any evidence contesting the fact that Mr Barrilleaux received direct instructions from Mr. Craiger telling him to terminate Ms. Davis. Instead, she has relied almost exclusively on Mr. Barrilleaux's general termination power as proof that he made the final decision. Simply because Mr. Barrilleaux was empowered to terminate employees does not mean that he was the person who decided to terminate Ms. Davis. Though it may not have been necessary for him to obtain advice from the Hospital's attorney or instructions from Mr. Craiger, the undisputed facts show that is exactly what happened. Thus, even viewing the facts in the light most favorable to Ms. Davis, there is no genuine issue of fact that Mr. Barrilleaux was not the final decision maker and, therefore, pursuant to the Fifth Circuit's holding in *Beattie*, he cannot be held individually liable for Ms. Davis' § 1983 claim.

Mr. Barrilleaux's successful defense does not end the court's inquiry. Under the facts as they have been presented, if Mr. Barrilleaux was not the final decision maker, necessarily the Board of Commissioners was. Consequently, Mr. Barrilleaux's defense is not available to Allen Parish. Furthermore, in contrast to individual government officials such as Mr. Barrilleaux, Allen Parish may not assert a defense of qualified immunity. In other words, if Allen Parish is to succeed on its motion for summary judgment, it must show that as a matter of law it did not deprive Ms. Davis of her First Amendment and/or Due Process rights.

## A) First Amendment Claim

In order to prove a First Amendment retaliation claim under § 1983, a plaintiff must show that (1) she suffered an adverse employment action, (2) her speech involved a matter of public concern, (3) her interest in commenting on matters of public concern outweighed the government employer's interest in promoting efficiency, and (4) her speech motivated the adverse employment action. *Johnson v. Louisiana* 369 F.3d 826, 830 (C.A.5 (La.),2004) (quoting *Harris v. Victoria Ind. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir.1999)). Although it is clear from the evidence that Ms. Davis suffered an adverse employment action by being terminated from her position with the hospital, it is equally clear that her phone call to the Secret Service did not relate to an issue of public concern. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1577 (C.A.5 (Tex.),1989) (quoting *Connick*, 461 U.S. at 147-48, 103 S.Ct. at 1690, 75 L.Ed.2d at 720). A court is "compelled to examine...the statements in issue and the circumstances under which they [were] made to see whether or not they...are of a character which the principles of the First Amendment protect. " *Connick, supra*, 461 U.S., at 150, n. 10, 103 S.Ct., at 1692, n. 10, quoting *Pennekamp v. Florida*, 328 U.S. 331, 335, 66 S.Ct. 1029, 1031, 90 L.Ed. 1295 (1946) (footnote omitted).

Ms. Davis cites case law holding that issues of public safety are "matters of public concern," which are afforded the "highest rung" of First Amendment protection in order to conclude that threats against the President and government are issues of public safety and thus necessarily a matter of public concern. See *Edwards v. City of Goldsboro*, 178 F. 3d 231, 247 (4th Cir. 2003)). Although the content of Ms. Davis communications appear superficially to relate to

issues of public safety and thus matters of public concern, this court cannot ignore the relevance of the context in which Ms. Davis chose to speak. It is clear from the record that Ms. Davis reported the threats of a diagnosed delusional patient of the psychiatric ward. Further, Ms. Davis admits herself that this patient had been at the hospital for a week prior to the incident, had exhibited similar threatening behavior during his stay, and at the time she made the call was restrained, sedated, and isolated to such a degree within the hospital that, at the very least, there was no immediate risk of his threats being carried out. To the extent that Ms. Davis alleges that the patient claimed he had "friends" to help him carry out his threats, there is no evidence suggesting he had any method of contacting them while restrained. The patient was under psychiatric care for delusions and it was his doctor who would have been in the best position to assess the severity of the situation and any necessity to report those threats. To that end, his doctor was aware yet unconcerned of similar threats.

Simply put, there is no constitutional right which affords unfettered free speech protection to a healthcare professional who chooses to disclose information learned from or about a patient in the course of treatment. Bound by the duties of doctor-patient privilege, it is the exception and not the rule which would allow Ms. Davis to discuss such information with anyone outside of the hospital.[2] Ms Davis has failed to sufficiently allege the facts necessary to show the applicability

---

[2] Furthermore, the Hospital's own policy regarding the release of patient information was clearly set forth in an acknowledgment that Ms. Davis signed when she was hired:

> Information about a patient's condition, care, treatment, personal affairs, or records is confidential and may not be discussed with anyone except for those repsonsible for patient care and treatment without the full consent of the patient or when compelled by legal requirements. *Only under these conditions with specific approval of the Administrator of the Hospital can employees discuss a patient condition.* Carelessness or thoughtlessness leading to the release of patient information may result in discipline up to and including discharge. [Emphasis

of any exception such that she had a right to disclose the information she obtained. In this context, the court disagrees with Ms. Davis that she spoke on a matter of public concern and should therefore be afforded protection from the consequences of her decision to do so. Consequently, she has failed to allege the facts necessary to show that her termination violated an actual constitutional right to free speech.

### B) Due Process

Ms. Davis claims that the evidence establishes that she was terminated from her job without an opportunity to address the charges against her, that the defendants defamed her by publicizing the false reason for her termination, and that her good name and reputation were put in jeopardy as a result.

Ms. Davis asserts only a claim of deprivation of a liberty interest as she has not asserted that she had any property right in her job or that she was deprived of life.[3] The Fifth Circuit has

---

Added]

(*See* Exhibit List of Scott Barrilleaux, pg. 006). There is no dispute that Ms. Davis had knowledge of the Hospital's policy regarding the release of patient information and that she violated this policy by reporting patient information before obtaining the "specific approval of the Administrator of the Hospital."

[3] Ms. Davis does not expressly state that she asserts only the deprivation of a liberty interest. However, a property interest requires more that a subjective expectancy of continued employment. *See Board of Regents v. Roth*, 408 U.S. 654, 577; 92 S.Ct. 2701, 2709; 33 L.Ed.2d 548 (1972) Because Ms. Davis was an "at will" employee with no employment contract, any claim for deprivation of a property interest would inevitably fail. Furthermore, if there is no protected property interest, there is no process due, *i.e.*, the status is employment at will, modified by annual contracts. *Spuler v. Pickar* 958 F.2d 103, *106 (C.A.5 (Tex.),1992) (citing *Roth*, 408 U.S. at 569, 92 S.Ct. at 2704). As part of her Due Process claim, Ms. Davis asserts that Allen Parish Hospital "did not follow a hospital policy/procedure in place at the time of [Ms. Davis'] termination which provided for the Hospital's Board of Commissioners to review the termination." *See* Plaintiff's Response, pg. 2. The policy referred to by Ms. Davis is Resolution 2001-1, which provides in pertinent part:

established the following test for determining whether a liberty interest exists:

> To establish a liberty interest, an employee must demonstrate that her governmental employer has brought false charges against her that might seriously damage her standing and associations in her community or that impose a stigma or other disability that forecloses freedom to take advantage of other employment opportunities. In other words, a public employee is deprived of a protected liberty interest either if terminated for a reason which was (i) false, (ii) publicized, and (iii) stigmatizing to her standing or reputation in her community or if terminated for a reason that was (i) false and (ii) had a stigmatizing effect such that (iii) she was denied other employment opportunities as a result.

*Bluitt v. Houston Independent School Dist.* 236 F.Supp.2d 703, 732 (S.D.Tex.,2002), (internal citations and quotations omitted). Issues of fact may exist as to the alleged falsity of the statements made by defendants. However, there are no genuine issues with respect to the other elements of Ms. Davis' claim. As discussed as part of this court's analysis of the claim of defamation, Ms. Davis has not established that the alleged false statements were ever

---

> G. The Administrator should email the Board Chairman any information, which he thinks the board would want to be apprised of. It will be the responsibility of the Board Chairman to then relay this information to the other board members. *In addition, upon hiring an employee, terminating or taking disciplinary action against an employee the Administrator shall as soon as possible notify the Board Chairman by email.* [Emphasis added].

[*See* Exhibit List of Scott Barrilleaux, pg. 0049]. This resolution does not require that the Board of Commissioners review her termination. Rather, it merely requires that the Hospital Administrator notify the Chairman of the Board of any new hires, employee terminations or disciplinary actions against employees. Further, there is no dispute that the resolution was followed in this case. See *Affidavit of Ron Craiger* and *Deposition of Scott Barrilleaux*, pp. 30-31, attached as Exhibit B and Exhibit C respectively to Mr. Barrilleaux's Motion for Summary Judgment. Consequently, Ms. Davis cannot use the Hospital's own policy/procedure as proof that she was terminated in violation of her due process rights.

"published." To reiterate, "statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons so as to constitute a publication." *Marshall v. Circle K. Corp.*, 715 F.Supp. 1341 (M.D.La. 1989).

In addition, Ms. Davis cannot establish that she was denied other employment opportunities as a result of the alleged false, stigmatizing statements as required by the alternative inquiry under *Bluitt*. In order to satisfy this test, "the public charges must be so stigmatizing that they create a 'badge of infamy' that destroy's plaintiff['s] ability to obtain other employment." *Bluitt*, 236 F.Supp.2d at 732. The evidence submitted here shows that Ms. Davis obtained employment within three to four weeks of her discharge from Allen Parish Hospital. Thus, like "publication," Ms Davis cannot establish that she has been unable to obtain employment because of the defendant's alleged false statements.

Ms. Davis has failed to establish a liberty interest under either of the tests set forth by Fifth Circuit jurisprudence. If no liberty interest exists, it follows that no deprivation of due process occurred. Because Ms. Davis has failed to establish any genuine issue with respect to either of her claims under 42 U.S.C. §1983, those claims must also be dismissed.

Based on the forgoing, this court holds that as a matter of law, Ms. Davis cannot sustain her burden of proof with respect to each of her claims against the defendants. Accordingly, the Motions for Summary Judgment filed by defendant, Scott Barrilleaux and defendant, Allen Parish Hospital will be GRANTED.

Lake Charles, Louisiana, this 21 day of September, 2005.

PATRICIA MINALDI
UNITED STATES DISTRICT COURT

COPY SENT
DATE 10/4/05
BY
TO